# Exhibit C



University of
California, Irvine

Katharine Tinto
Director, Criminal Justice Clinic
Clinical Professor of Law

September 24, 2018

Re:    Petition for Commutation of Sentence by Daniel Egipciaco, Reg. No. #57385-05

Dear President Trump;

As a law professor who studies undercover policing and reverse stings, and as someone who has gotten to know Mr. Egipciaco through his efforts to bring attention to the critiques of reverse stings, I write this letter in support of Mr. Egipciaco's clemency petition.

Mr. Egipciaco committed his offenses as a result of being caught in what is typically referred to as a "stash house sting." The stash house sting is an undercover policing tactic, most frequently utilized by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), in which an undercover agent asks a confidential informant to recruit a suspect who expresses his willingness to rob a stash house, a place where drug dealers allegedly keep large amounts of drugs. The undercover agent then meets with the suspect and explains all the details of this robbery, including the amount of drugs in the location and the need to bring firearms and recruit other individuals to help. The stash house is entirely imaginary—the house and the drugs do not exist. In a typical stash house sting, the undercover agent "urged the participant to bring others into the plot, played the principal role in devising and executing the imaginary crime, and then walked the defendants through a script that ensured lengthy prison sentences for committing a crime that did not exist." [1]

In the past several years, the stash house sting has come under increasing scrutiny by federal judges across the country.[2] Judge Posner of the Seventh Circuit Court of Appeals has called these

---

[1] *United States v. Black*, 750 F.3d 1053, 1054 (9th Cir. 2014) (Reinhardt, J., *dissenting from the denial of rehearing en banc*).

[2] *See, e.g., United States v. Brooks*, 734 F. App'x 120, 123 (3d Cir. 2018) ("[W]e reiterate to the Government that 'we have expressed misgivings in the past about the wisdom and viability of reverse stash house stings,' and the fact "[t]hat this case fell on the safe side of the due process divide should not be taken to indicate that all such prosecutions will share the same fate.'") (quoting *United States v. Washington*, 869 F.3d 193, 213 (3d Cir. 2017)); *United States v. McKenzie*, 656 F.3d 688, 692 (7th Cir. 2011) ("The crime proposed was, in the district  judge's words, a 'massive' one; it is somewhat baffling, then, that the young men who the authorities recruited did not  have 'massive' criminal histories to match."); *United States v. McLean*, 85 F. Supp. 3d 825, 841 (E.D. Pa. 2015) ("I  share the concerns of other judges about the disproportionate impact this law enforcement tactic has on minority  defendants, and the severe minimum sentences such operations trigger."); *United States v. Hardee*, 1:12-CR-00734-  JEI-2 (D.N.J. Jan. 8, 2015) ("If I went to a cocktail party and spoke to ten relatively intelligent people, not lawyers,  just people out there, and explained to them the stash house sting, and then said the defendant was facing life  imprisonment for agreeing to participate in a non-existent crime that could never have happened, all ten of them would  think I'm crazy or that the law was crazy, or is -- was it Dickens who said the law is an ass? If the law says that, the  law is an ass.") (Irenas, J., Sentencing Transcript). Other federal judges who have raised concerns regarding the stash  house sting are Judges Posner and Evans of the Seventh Circuit Court of Appeals, Judges Leavy, Noonan, Reinhardt, and Fletcher of the Ninth Circuit Court of Appeals, Judge Hatter, Judges Wright and Real of the Central District of  California, Judge McHugh of the Eastern District of Pennsylvania, and Judge Meyer of the District of Connecticut.

stings a "disreputable tactic" and questioned whether they make sense as a tool in the "war on drugs."[3] Significantly, by selecting a particular amount of drugs or telling the suspects to bring firearms, judges are often forced to sentence defendants to lengthy mandatory prison sentences without regard to the defendant's role in the offense or overall criminal culpability. As Judge Tashima of the Ninth Circuit Court of Appeals states, "[t]he ease with which the government can manipulate these factors makes us wary of such operations in general, and inclined to take a hard look to ensure that the proposed stash-house robbery was within the scope of [the defendant's] ambition and means."[4]

Recently, United States Attorneys in several districts have changed the way these stings are prosecuted, and as a result, sentencing ranges for these defendants have dramatically changed as well. Typically, defendants caught in these stings are charged with at least three offenses: a violation of 18 U.S.C. § 1951 (conspiracy to commit a *Hobbs* Act Robbery), a violation of 21 U.S.C. § 846 and § 841 (conspiracy to possess with intent to distribute 5 kilograms or more of cocaine), and a violation of 18 U.S.C. § 924(c) (possession or use of a firearm during and in relation to a drug trafficking crime). These charges carry several mandatory minimum sentences, the most serious of which is usually a ten-year mandatory minimum sentence on the drug-related count (21 U.S.C. §§ 846 & 841). Historically, if defendants wanted to plead guilty, they were required to plead to the drug-count thereby ensuring a mandatory prison sentence of at least ten years. In addition, this potential sentence was frequently combined with a sentencing enhancement based on prior felony drug convictions, so defendants, such as Mr. Egipciaco, faced mandatory minimum sentences of twenty years or sometimes even mandatory life in prison.

Today, United States Attorneys in several districts are dismissing the drug count, which effectively reduces the ultimate sentencing range of the defendants. In some cases, the prosecution has permitted the defendant to plead guilty to the charge of conspiracy to commit a robbery and has dismissed the drug count in return.[5] Notably, in eight stash house sting cases, the U.S. Attorney's Office in the Northern District of Illinois simply dismissed the drug count outright.[6]

---

[3] *United States v. Kindle*, 698 F.3d 401, 414 (7th Cir. 2012) (Posner, J., dissenting).

[4] *United States v. Briggs*, 623 F.3d 724, 729-30 (9th Cir. 2010) ("In fictional stash house operations like the one at issue here, the government has virtually unfettered ability to inflate the amount of drugs supposedly in the house and thereby obtain a greater sentence for the defendant. In fact, not only is the government free to set the amount of drugs in a fictional stash house at an arbitrarily high level, it can also minimize the obstacles that a defendant must overcome to obtain the drugs."); *see also United States v. Black*, 733 F.3d 294, 317 (9th Cir. 2013) (Noonan, J., dissenting) ("[I]t is a denial of due process for sentences to be at the arbitrary discretion of the ATF."); *United States v. Caban*, 173 F.3d 89, 93-94 (2d Cir. 1999) (inviting Sentencing Commission to examine stash house tactic for potential abuse when government sets the bait).

[5] *See, e.g., United States v. Blyden*, No. 1:14-CR-00095 (Jan. 6, 2016); *United States v. Colon*, No. 3:14-CR-00085 (D. Ct. June 19, 2015); *United States v. Gaines*, No. 3:14-CR-00066 (D. Ct. Mar. 5, 2015); *United States v. Alexander*, No. 1:11-CR-00148, (N.D. Ill. Feb. 25, 2015).

[6] *See United States v. Alexander*, No. 11–CR–148; *United States v. Brown*, No. 12–CR–632; *United States v. Cousins*, No. 12–CR–865; *United States v. DeJesus*, No. 12-CR-511; *United States v. Elias*, No. 13-CR-476; *United States v.*

Although I cannot be certain why in any one case the prosecution decided to dismiss the conspiracy to distribute narcotics count, it is my reasoned opinion that these prosecutorial decisions reflect an attempt to address the criticism that the mandatory sentences that result from these stings do not accurately reflect the criminal culpability of the offender and perhaps other criticisms surrounding the way in which the suspects are chosen and the racial makeup of those caught in the net of the stash house sting.[7]

In light of recent events in the prosecution of stash house stings, it is appropriate to conclude that if charged with these crimes today, there is some likelihood that Mr. Egipciaco would not have faced a drug conspiracy count or would have been offered a plea deal which did not require a plea to the drug count and the ten year mandatory minimum prison sentence.

I first became acquainted with Mr. Egipciaco several years ago when he reached out to me after reading my scholarly writing and public statements regarding stash house stings. I have been incredibly impressed by Mr. Egipciaco's creation of the listserve and website, *reversesting.org*. Mr. Egipciaco and his supporters are able to provide many individuals, both incarcerated and those not, with updates regarding judicial decisions, legislative developments, and the Sentencing Commission's statements regarding reverse stings. Mr. Egipciaco is professional, thoughtful, and displays a natural aptitude for legal reasoning, policy development, and advocacy. I believe that if released, he would be able to use these skills he has developed in doing this important advocacy work in prison.

If you have any questions or would like more information, I can be reached at (949) 824-9247 or via email at ktinto@law.uci.edu. Thank you for your time and consideration.

Sincerely,

Katharine Tinto
Clinical Professor of Law

---

*Jackson*, No. 13-CR-636; *United States v. Paxton*, No. 13-CR-103; *United States v. Williams*, No. 12-CR-887. There were no drug charges filed in the first instance in a ninth stash house sting case: *United States v. Payner*, No. 12-CR-854.

[7] Both the Fifth Circuit and Seventh Circuit have ordered discovery regarding the basis on which the ATF and federal prosecutors identify suspects for investigation as a result of defense claims of selective enforcement of the laws on the basis of race. *See United States v. Washington*, 869 F.3d 193, 213-14 (3d Cir. 2017); *United States v. Davis*, 793 F.3d 712 (7th Cir. 2015). Several district courts have as well. *See. e.g., United States v. Jackson*, 2018 WL 748372 (D. New Mexico, Feb. 7, 2018); *see also supra* note 6.