J945egiS                     sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                          05 Cr. 202 (JGK)

5   DANIEL EGIPCIACO,

6               Defendant.

7   ------------------------------x

8                                         September 4, 2019
                                          10:50 a.m.
9

10  Before:

11                    HON. JOHN G. KOELTL,

12                                         District Judge

13

14                      APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    BY:   ANDREW DEMBER
17        ADAM HOBSON
          Assistant United States Attorneys
18
    FEDERAL DEFENDERS OF NEW YORK
19       Attorneys for Defendant
    BY: PEGGY CROSS-GOLDENBERG
20

21

22

23

24

25

1          (Case called)

2          THE DEPUTY CLERK:  Will all parties please state who

3    they are for the record.

4          MR. DEMBER:  Your Honor, Andrew Dember for the

5    government.  Good morning, your Honor.

6          THE COURT:  Good morning.

7          MS. CROSS-GOLDENBERG:  And the Federal Defenders of

8    New York by Peggy Cross-Goldenberg with Mr. Egipciaco.  Good

9    morning, your Honor.

10          THE COURT:  Good morning.  Please, have a seat.

11          I have received the parties' correspondence including

12    the government's letter dated August 27th, 2019, and the

13    defense letter dated August 28, 2019.  I signed the nolle pros

14    for the defendant's prior felony information and I noted that

15    it's already been picked up on the docket sheet.  The

16    government consents to the vacatur of Count Three of the

17    indictment no. 05 crim 202.  That leaves Counts One, Two, and

18    Five.  The parties agree that the guideline sentencing range is

19    151 to 188 months' imprisonment.  The government points out

20    that there is a mandatory term of five years' supervised

21    release on Count Two and a maximum of three years' supervised

22    release on Counts One and Five.  There is also a mandatory

23    minimum sentence of 10 years on Count Two which is the drug

24    conspiracy but that's academic in a way because the defendant

25    has already spent more than 10 years' imprisonment.  So, today

1    is for resentencing on Counts One, Two, and Five.  I will

2    listen to all of the parties as I always do at a sentencing but

3    I think I will begin -- I will call on -- I always do defense,

4    counsel, defendant, and then the government but, and I will do

5    that but I will start by calling on the government for anything

6    that the government wants to say since some of this was at the

7    instance of the government.

8              Mr. Dember, good to see you again.

9              MR. DEMBER:  Good to see you, your Honor.

10             According to my calculations, your Honor, and I may be

11   off by a number of weeks, maybe a month, Mr. Egipciaco has

12   spent and served 174 months in prison.  If one would calculate

13   good time on his behalf, which I believe from

14   Ms. Cross-Goldenberg's submissions he certainly earned, he has

15   completed even the very top range in what is the agreed upon

16   sentencing range in this case.

17             The reason the government, as opposed to defense

18   counsel didn't submit anything in terms of sentencing other

19   than the letters and the agreed upon guideline range, is

20   because, frankly, there is not much else to add to this case.

21   Your Honor knows the case well.  Your Honor presided over the

22   trial, presided over the original sentencing, over post-trial

23   motions, and obviously made clear its view on the case and the

24   sentencing options that was left to the Court.  We certainly

25   believe the range that is agreed upon is a reasonable range and

J945egiS                          sentence

1    the sentence within that range would have been or will be

2    reasonable, and in light of the fact that the defendant has

3    served essentially the top of that range there is really

4    nothing else to say.  I believe he has served his time in this

5    case, your Honor.

6              THE COURT:  Well, I will make some remarks later but

7    it was to the government's credit that the government finally

8    vacated the prior felony information.

9              MR. DEMBER:  Yes, your Honor.  And that, obviously,

10   was triggered by the Davis case which obviously invalidated,

11   first, Count Three of the -- the firearms count -- one of the

12   two firearms counts that Mr. Egipciaco was convicted of and

13   with that happening, your Honor, it required, in the

14   government's view, a plenary resentencing in this case.  And,

15   as is reflected in our application or our submission of the

16   nolle pros, the U.S. Attorney in this district considered all

17   the facts and circumstances as they now exist including

18   obviously Mr. Egipciaco's history and the time he has served

19   and what he has done during that time and concluded that the

20   original filing of that prior felony information was no longer

21   needed in a resentencing, it was no longer required in the

22   interest of justice and under those circumstances, your Honor,

23   we find ourselves here where we see that Mr. Egipciaco has

24   essentially served, essentially, the top of the guideline range

25   that applies to him and has done his time.

J945egiS                          sentence

1          THE COURT:  Okay.  It's particularly gratifying to

2     hear that from such a senior person from the U.S. Attorney's

3     office, so thank you.

4          Now, a technical legal question.  A sentence of

5     time-served on all three counts would include time-served on

6     the firearms count but time-served is actually in excess of the

7     maximum.  Nevertheless, it would seem to me that that would be

8     the appropriate sentence, in particular, because if I were to

9     sentence the defendant to a term of years on the firearms

10    count, that would lead the Bureau of Prisons or marshal service

11    to make calculations and might otherwise delay the defendant's

12    release.

13         Do you agree?

14         MR. DEMBER:  That sounds correct to me, your Honor.

15    Yes, I do.

16         THE COURT:  Okay.  The marshals are nodding their

17    heads.  Thank you.

18         So, now I will listen to Ms. Cross-Goldenberg for

19    anything you wish to tell me in connection with resentencing.

20         MS. CROSS-GOLDENBERG:  Thank you, your Honor.  We are

21    very happy to be here as well.

22         Coincidentally, I just dropped my daughter off for her

23    first year of pre-K-4 this week and I say that because I

24    started working on Mr. Egipciaco's case the day I got back from

25    maternity leave in August of 2015.  The Court appointed the

1    Federal Defenders to work on Mr. Egipciaco's case when he made

2    a pro se motion for a reduction in sentence for a drug minus

3    two resentencing.  He obviously was not eligible for that

4    because the Court already sentenced him to the mandatory

5    minimum but the Court asked us to get involved and since then,

6    for the past four years, we have been asking, begging,

7    pleading, convincing -- finally -- the U.S. Attorney's office

8    to hear the Court's requests to do something to ameliorate the

9    sentence in this case.

10            Obviously, as Mr. Dember said, the Court knows this

11   case much better than either counsel does because we weren't

12   here for the trial and the original sentencing, but it was

13   clear that even then the Court felt that something should be

14   done about the sentencing options that were available to the

15   Court.

16            THE COURT:  Indeed, I asked the assistants to take it

17   up with supervisors.

18            MS. CROSS-GOLDENBERG:  Exactly.  And even in denying,

19   as it had to, the drug minus 2 resentencing the Court, citing

20   the Holloway decision, requested that the U.S. Attorney's

21   office consider exercising its discretion to do something in

22   this case and since then we have been going back and forth and

23   back and forth trying to get to this day and we are very

24   grateful that we are finally here.

25            You know, there is a lot about this case that stands

1    out as an example of some of the worst impacts of mandatory

2    minimum sentencing.  Mr. Egipciaco, when the Court first met

3    him, was a 24-year-old man who had never been sentenced to

4    prison, had never served time in jail, and the Court was

5    required to give him the 25 years.  He made a mistake, for

6    sure, but 25 years for a first-time jail sentence, and when you

7    throw in all the factors like the informant manipulation of the

8    drug amount and other facts of the case that impacted the

9    mandatory minimums, the sort of trial penalty prior felony

10   information practice, a lot of these things that, to its

11   credit, the U.S. Attorney's office no longer does.  And, a lot

12   of sentencing policy that has changed in the past 15 years

13   because of some of the things we see in this case.  And so, I'm

14   grateful that we are here and we can actually do something

15   about it Mr. Egipciaco's case but we don't want to focus on the

16   negatives and the bad things that have happened for the past 14

17   years.  I just want to take a little bit of time to talk about

18   the positives.  And I know the Court has read our submissions

19   over the past few years and --

20           THE COURT:  You know, I will just add, I couldn't

21   agree more that it would be counter-productive for the

22   defendant to think about the negatives rather than the

23   positives.  I still remember the original presentence report in

24   this case which said that the defendant was a person of great

25   talent and promise but seems to have taken a wrong turn and,

J945egiS                          sentence

```
 1   indeed, the original Criminal History Category in the case was
 2   III, the defendant did not come to the case, as suggested in
 3   one of the pieces of correspondence, with a situation in which
 4   the defendant did no wrong.  It was not a case where the
 5   government simply picked someone out and proceeded with a
 6   prosecution that had no basis.  There was a trial and there was
 7   a sentence and a co-defendant who was sentenced to a sentence
 8   that was over 10 years.  So, it would be wrong for the
 9   defendant to, and there were then the problems of the sentence
10   which the Court has spoken about on several occasions, but it
11   is wrong for the defendant to think about the negatives rather
12   than the positives including the reduction that the government
13   agreed to and where the defendant goes from here.
14        So, because you had said something that triggered my
15   own thoughts I interrupted you.
16        MS. CROSS-GOLDENBERG:  That's okay.  That's exactly my
17   point, your Honor.  And I think one of the things that is
18   amazing about Mr. Egipciaco is that that's right on in terms of
19   the dark place that he was at the time, the wrong turn he had
20   taken and, truthfully, that time between conviction and
21   sentencing which was a long time because the Court had
22   requested the review and all of that, was a very, very dark
23   time for him.  And the fact that he was able, as a 24 or
24   25-year-old, after being sentenced to jail until he was almost
25   50, right, the fact that he could still look toward the future
```

J945egiS                       sentence

1   on the outside and focus on bettering himself not just making

2   his day-to-day life while he was incarcerated easier but

3   everything he did was about *How is this going to help me be*

4   *better when I get out?*  *How is this going to help me get a job*

5   *when I get out?*  How many people who are in the middle of a

6   25-year bid do you see that have their résumé prepared and

7   ready to go.  Right?  That was one of the attachments to the

8   sentencing letter.

9           And he hasn't just looked at what he can do to make

10  things better for him, right?  It has always been how can he

11  serve?  How can he help other individuals who are in his

12  position?  How can he help other young men who are in the

13  position he was in back in 2015 stay out of prison?  And it's

14  been remarkable.  I mean, he talks in that interview that was

15  transcribed that I attached as Exhibit A to my letter about the

16  transition, right, and how some people never come to that

17  transition point, they can't think about their life on the

18  outside, they can't prepare themselves for; I have to put the

19  past in the past, I have to take the bad and focus on what I

20  can do from here.  There are lots of people who probably work

21  in this building who are unable to do that, right, look at the

22  problems in their life and focus on what they can do to control

23  their future and the fact that he has been able to do that for

24  the past 14 years not knowing if he was going to be out for

25  another couple decades, has truly been remarkable.  And I

J945egiS                          sentence

1    think, you know, I think not because of the problems with the

2    original sentencing scheme, not because of what has happened in

3    the law or anything like that, but I think just looking at his

4    prison record and just seeing -- I mean, to go 15 years without

5    getting a single shot, a single writeup, that's hard to do,

6    even if you are perfect, to just not be in the wrong place at

7    the wrong time.  But the focus that he has had, he never lost

8    faith in himself, he never lost faith in his family.  I think

9    we can all feel good about him starting this new chapter in his

10   life getting out and starting over.

11           I apologize and I should have done this at the

12   beginning, your Honor but his mother Alida and his brother

13   Reinaldo Egipciaco, who the Court has heard from -- has heard

14   from in writing and may even recognize from past proceedings,

15   are here.

16           THE COURT:  Yes.  I recognize the defendant's mother.

17           MS. CROSS-GOLDENBERG:  I just want to say one -- and

18   this I know these are technical legal issues and I don't want

19   to get bogged down in those sorts of technicalities.  I would

20   ask the Court to impose the sentence of 10 years because a

21   sentence of time-served, while it might get him out a couple

22   hours earlier, I think the BOP has run its calculations, they

23   know that he has that time in and it's going to be on his

24   record what his sentence was.  And I think to the extent that

25   10 years is the mandatory minimum, I think that's the right

1   sentence in this case as opposed to a sentence that turns out

2   to be 175 or 200 months, which could be interpreted as the

3   Court thinking that -- not just that that's when he was here

4   but that that's what the conduct called for.

5           THE COURT:  The marshals are vigorously shaking their

6   head.

7           THE MARSHAL:  Your Honor?

8           THE COURT:  And so, rather than having to interpret

9   gestures.

10          THE MARSHAL:  If the goal is to have the defendant

11  walk out today the order would have to say time-served.  If you

12  put the 10 year mark on he would have to go back to BOP, they

13  would do the calculation, and they would determine when they

14  release him.  If your order says time-served he goes back

15  downstairs, we run him, determine that he has no warrants

16  because he has been in custody, and then we cut him lose to his

17  family at the front door.

18          THE COURT:  That's what I thought.

19          THE MARSHAL:  If you do do the 10 years I have no

20  option because he doesn't belong to the marshal's office, he

21  belongs to BOP, I have to send him back.

22          THE COURT:  Doesn't the BOP do their calculations at

23  another place?

24          THE MARSHAL:  So he will go there and once the

25  calculations are done, then they'll be transferred via the

J945egiS                        sentence

1    computer system and then he would be released.  I don't know

2    the time frame because I'm not a BOP employee, I just know it

3    would take more time if that's the route that you determine for

4    him.

5              THE COURT:  Thank you.

6              It is hard for me to believe that a sentence of

7    time-served would be more detrimental to the defendant for the

8    defendant's record than a sentence of 10 years, 10 years, five

9    years, to be served concurrently.

10             MS. CROSS-GOLDENBERG:  I understand, your Honor.  Like

11   I said, it is a legal technicality.  I don't want to get bogged

12   down in there.  Obviously, if the Court sentences Mr. Egipciaco

13   to time-served hopefully everybody in this room but certainly I

14   know four of us are going to be very happy.

15             I know he has a couple things he wants to say.

16             THE COURT:  Oh, sure.  I will call on the defendant.

17             MS. CROSS-GOLDENBERG:  And I just want to thank the

18   Court again for appointing our office four years ago and

19   allowing us to fight for him and to continue to bring to light

20   his amazing record and hopefully to walk him out of here today.

21             Thank you, your Honor.

22             THE COURT:  Mr. Egipciaco, I will recognize you for

23   anything you want to tell me, anything you would like to say.

24             THE DEFENDANT:  Yes, your Honor.

25             I want to start off by thanking my family, my mother

1    and brother who are in court today here with me, even the

2    family members that supported me that weren't able to make it

3    to court today for holding me down throughout this long, tough

4    journey that I have been through.  I want to thank your Honor

5    for consistently requesting that the government look at the

6    circumstances of the case and the characteristics of the

7    individual and consider its discretion to give the Court some

8    more discretion rather than the mandatory minimum, and I want

9    to thank Mr. Dember for being the one from the government to

10   finally see that the circumstances of the case and the

11   characteristics of the individual were deserving of this relief

12   and this opportunity to potentially be walking out this door

13   and be reunited with my family.

14          It has been a long journey and I have managed to stay

15   focused, like the Court and my lawyer was saying earlier, on

16   the future.  I didn't get caught up with the sentence that I

17   had, as hard as it was and as many times as things seemed

18   bleak, I just continued to prepare myself for the inevitable

19   day that I would be released around people who were doing life

20   and were never going to see the light of day.  So, I guess that

21   kind of sort of inspired me, the fact that knowing that as far

22   along as my sentence was that I had to do, I was going to see

23   the light of day and I would have to be prepared to reintegrate

24   into society and be a productive member of society.  So, that's

25   pretty much what I focused on.

1          I want to thank the Courts for taking into

2    consideration all the letters of support and potential

3    employment opportunities that I have received throughout the

4    years, the circumstances of my case and cases like it that have

5    come to light since across the country, and just all the other

6    factors that come into play when considering to reimpose the

7    sentence.  If granted the blessed opportunity of getting

8    time-served and walking out these doors today, I am prepared to

9    go out there and live a righteous, productive life and continue

10   my work with the Young Men Incorporated program and mentoring

11   the youth so that they don't have to experience the things that

12   I experienced.

13         I thank the Court for giving me the opportunity to

14   speak and I pray that today will be the first day of a new

15   chapter of my life.

16         THE COURT:  Thank you, Mr. Egipciaco.

17         I said I would call on the government again if there

18   is anything the government wants to tell me.

19         MR. DEMBER:  No, your Honor.  I don't believe there is

20   anything else to add.

21         Thank you.

22         THE COURT:  The parties have agreed to dispense with a

23   presentence report.

24         Based on the submissions, I conclude that under the

25   current guidelines the total offense level is 32, the Criminal

J945egiS                     sentence

History Category is III, and the guideline sentencing range is

151 to 188 months.  I appreciate that the guidelines are only

advisory and that the Court must consider the various

sentencing factors in 18 U.S.C Section 3553(a) and impose a

sentence that is sufficient but no greater than necessary to

comply with the purposes set forth in Section 3553(a)(2).

          In this case the Court has made its views known on a

number of occasions.  The Court pleaded with the government not

to tie the Court's hands with respect to the original sentence

with the mandatory minimums that resulted in a sentence that

was too long but that the Court could not do anything about.

The Court subsequently asked the government again to reconsider

the sentence.  The Supreme Court has now changed the law and

that led to vacating one of the counts of conviction.  The

government, to its great credit, used the opportunity to nolle

pros the prior felony information leading to a drastic

reduction in the mandatory minimum sentence.

          The defendant now faces a guideline sentencing range

where the time he has served fits approximately in that range.

For the reasons that the Court noted in its original sentence,

the Court would have varied from the guideline sentencing range

even further but it will certainly be sufficient for the Court

to sentence the defendant to time-served, a sentence within the

guideline sentencing range.  To alleviate defense counsel's

concern, the Court will make it clear in the judgment that the

J945egiS                          sentence

sentence is time-served on all three counts to run

concurrently, but the Court would have imposed a lower sentence

except for the fact that the Court wanted to assure that the

defendant is released promptly.

          As I said earlier in this proceeding, my hope is that

the defendant will use these events as a source for a new

beginning.  The defendant, plainly, was not in a good place at

the time of the original events that led to his conviction.

Nevertheless, it is clear that the defendant has enormous

potential -- he is articulate, talented, should never sell

himself short.  It is my hope that he will use those talents to

succeed with the great help of his family.  I am particularly

grateful to the defendant's mother who stood behind the

defendant throughout all of these years.

          I should add that there will be a period of supervised

release and that any violation of the conditions of supervised

release will come back before me.  I profoundly hope that the

defendant does not violate the terms of supervised release and

that I do not see the defendant again.  I will have a vivid

recollection of all of these proceedings and so, again, to

reiterate, I hope that the defendant never violates the terms

of supervised release including that the defendant will not

violate any provisions of state or local law or federal law.

So, on balance, in this case the Court intends to impose a

sentence of time-served on Counts One, Two, and Five, all to

J945egiS                         sentence

1    run concurrently.  Imprisonment is to be followed by a

2    five-year term of supervised release on Count Two, and a

3    three-year term of supervised release on Counts One and Five,

4    all to run concurrently.

5            The conditions for supervised release will be the

6    current mandatory conditions of supervised release and the

7    current standard conditions of supervised release in this

8    district.

9            Does the defendant need a condition of substance abuse

10   treatment as a term of supervised release?  It was a term of

11   the original supervised release.

12           MS. CROSS-GOLDENBERG:  I don't think so, your Honor,

13   given the length of time on and his record in prison.

14           THE COURT:  Do you want to consult with the defendant

15   to ask if he wants such a term?

16           MS. CROSS-GOLDENBERG:  No.  I don't think so, your

17   Honor.

18           THE COURT:  Fine.  I won't impose it.

19           MS. CROSS-GOLDENBERG:  Yes.

20           THE COURT:  I will not impose a fine because the

21   defendant lacks the ability to pay a fine after taking into

22   account the presentence report.  I assume that the defendant

23   has already paid his special assessment.  I don't know what

24   happens to the additional $100 special assessment on the count

25   that's been vacated.

J945egiS                          sentence

1          MS. CROSS-GOLDENBERG:  I think he can get a refund,

2    your Honor.

3          THE COURT:  You can apply for any refund.  It is

4    certainly not part of the sentence, being resentenced on three

5    counts and the special assessment has been, I assume, paid on

6    those counts.  The Court will not impose restitution because

7    there is no victim under 18, U.S.C., Section 3663.

8          The sentence consistent with the factors in section

9    3553(a) and is sufficient but no greater than necessary to

10   comply with the purposes of Section 3553(a)(2).

11         I have explained the reasons for the sentence.  Before

12   I actually impose the sentence, anything further that defense

13   counsel wants to say?

14         MS. CROSS-GOLDENBERG:  No, your Honor.

15         THE COURT:  Anything further that the defendant wants

16   to say?

17         THE DEFENDANT:  No, your Honor.

18         THE COURT:  Anything further from the government?

19         MR. DEMBER:  No, your Honor.

20         THE COURT:  Pursuant to the Sentencing Reform Act of

21   1984, it is the judgment of this Court that the defendant,

22   Daniel Egipciaco, is hereby committed to the custody of the

23   Bureau of Prisons to be imprisoned for a term of time-served on

24   Counts One, Two, and Five, all to run concurrently.  I will

25   note on the judgment that the Court would have varied

1   downwardly to a lesser sentence were it not for the fact that

2   the Court wishes the defendant to be released in as promptly as

3   possible.  Upon release from imprisonment, the defendant shall

4   be placed on supervised release for a term of five years on

5   Count Two, and three years on Counts One and Five, all to run

6   concurrently.

7          Within 72 hours of release from the custody of the

8   Bureau of Prisons the defendant shall report, in person, to the

9   probation office in this district.  While on supervised

10  release, the defendant shall comply with the standard

11  conditions of supervised release in this district:

12         The defendant shall not commit another federal, state

13  or local crime.

14         The defendant shall not possess a firearm or

15  destructive device as defined in 18 U.S.C. Section 921.

16         The defendant shall refrain from any unlawful use or

17  possession of a controlled substance.

18         The defendant shall submit to one drug test within 15

19  days of release from imprisonment and at least two periodic

20  drug tests thereafter as directed by the probation officer.

21         The defendant shall cooperate in the collection of DNA

22  as directed by the probation officer.

23         I have already explained the reasons for the sentence.

24  Does either counsel know of any legal reason why the sentence

25  should not be imposed as I have so stated it?

J945egiS                          sentence

1          MS. CROSS-GOLDENBERG:  No, your Honor.

2          MR. DEMBER:  No, your Honor.

3          THE COURT:  I will order the sentence to be imposed as

4     I have so stated it.

5          Mr. Egipciaco, you have the right to appeal the

6     sentence.  The notice of appeal must be filed within 14 days

7     after the entry of the judgment so you should discuss this

8     issue promptly with your lawyer.  If you cannot pay the cost of

9     appeal, you have the right to apply for leave to appeal in

10    forma pauperis.  If you request, the Clerk will prepare and

11    file a notice of appeal on your behalf immediately.

12          Do you understand?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  The government has already moved to

15    dismiss Count Three and the defendant agrees, right?

16          MR. DEMBER:  Correct, your Honor.

17          MS. CROSS-GOLDENBERG:  Yes, your Honor.

18          THE COURT:  Okay.  Count Three is dismissed on the

19    motion of the government and that disposes of all of the

20    counts, right?

21          MR. DEMBER:  Yes, your Honor.

22          THE COURT:  Okay.  Anything further?

23          MR. DEMBER:  No, your Honor.

24          MS. CROSS-GOLDENBERG:  Not from us, your Honor.

25          THE COURT:  I have signed the order that the

J945egiS                          sentence

1    defendant, having been sentenced to time-served, is hereby

2    ordered released, pending those detainers, from the custody of

3    the Bureau of Prisons and United States Marshal and I will give

4    a copy to the marshal.

5          Anything further?

6          MS. CROSS-GOLDENBERG:  Not from us, your Honor.

7          MR. DEMBER:  No, your Honor.

8          THE COURT:  Okay.  Good morning, all.

9          MS. CROSS-GOLDENBERG:  Thank you.

10         (Adjourned at 11:25 a.m.)

11         (Defense counsel present; time noted:  12:00 p.m.)

12         THE COURT:  I don't see -- is the government here?

13         MS. CROSS-GOLDENBERG:  The marshals have told us since

14   it is resentencing that they will not release him from this

15   building but they will bring him back to Brooklyn and in fact

16   he may already be on the bus back to Brooklyn.  But I just

17   asked the Court's deputy if he could call down and ask them to

18   hold him just in case.

19         I emailed Mr. Dember to let him know.  If that would

20   change the sentence the Court would impose in terms of it not

21   making a difference if he got the 10 years, he has to go back

22   to Brooklyn anyway, then we would be here to see the Court

23   again --

24         THE COURT:  My understanding -- maybe the prosecutor

25   wants to make an appearance because I don't listen *ex parte*.

J945egiS                        sentence

1        MR. HOBSON:  Yes, your Honor.  Adam Hobson for the

2   government.

3        THE COURT:  Fine.  And the defendant isn't present

4   because he is not here and defense counsel waives his presence.

5        Defense counsel waives the defendant's presence?

6        MS. CROSS-GOLDENBERG:  Yes, your Honor.

7        THE COURT:  My understanding is once the proceeding is

8   over the Judge, under the rules, can't change the sentence.

9   Right?  And my sentencing proceeding was over.  I just had

10  another proceeding.  I am certainly happy to make any

11  intervention with the Marshal service and the Bureau of Prisons

12  to have the defendant released in the normal course from this

13  building, if that's the way in which it is normally done, and

14  I'm sure Mr. Dember would intercede to the same effect.

15       MS. CROSS-GOLDENBERG:  Yes, your Honor.

16       I was just -- to the extent that the sentence seemed

17  to be based on the representation of the marshals that one way

18  he would be released from here, the other way he would be

19  released from Brooklyn --

20       THE COURT:  No, it wasn't just released from Brooklyn.

21  My understanding was they would have to calculate his time and

22  there would be the division of the Bureau of Prisons that makes

23  those calculations for a release as opposed to an order from

24  the Court that says released with time-served.

25       MS. CROSS-GOLDENBERG:  Right.

J945egiS                              sentence

1          THE COURT:  And I thought, again I had thought that

2    those calculations are not made in Manhattan or Brooklyn but

3    rather by another office of the Bureau of Prisons.  Yes, I want

4    to see the defendant released as soon as possible, if from this

5    court or from the MDC.  And, I am sure that Mr. Dember would

6    want to see the same thing.  So, if there is anything that I

7    can do by way of order to effectuate that he will be pleased to

8    do that.

9          MS. CROSS-GOLDENBERG:  Thank you, your Honor.  We

10   appreciate that.

11         I don't know if Mr. Fletcher went back to see if he is

12   still here or if there is anything that can be done with the

13   marshals.  If there is, then we will let the Court know.

14         THE COURT:  Okay.

15         MS. CROSS-GOLDENBERG:  And I will get Mr. Dember back

16   over here.

17         THE COURT:  Okay.  I am here through -- a long time.

18         MS. CROSS-GOLDENBERG:  Thank you, your Honor.  I

19   appreciate it.

20         THE COURT:  Okay.

21         I thank the government prosecutor for standing in.

22                              o0o

23

24

25